## Stook's Appeal.

20 349
127 491

A testator gave to his two maiden sisters a life estate in land, and further provided, that after the decease of *both his said sisters* the remainder of said property after paying a mortgage to those entitled thereto, be divided among his "then heirs at law, or their legal representatives, to them, their heirs and assigns for ever."

The will was dated in March, 1832, the testator died in November, 1834, and the life estates terminated in 1839 by the death of the last of the two sisters. The testator *at his death* left as his next of kin, a daughter of his deceased brother, and three sisters, one a married woman, the latter of whom died *before* the termination of the life estate but leaving eight grandchildren:

It was *held* that the terms "their legal representatives" were descriptive of the devisees and not words of limitation, and that the proceeds of the estate in question, on the termination of the life estates, went one-half to the daughter of the deceased brother of the testator, and the other half to the grandchildren of the sister who was living *at the death of the testator* but who died afterwards.

APPEAL from the decree of the Orphans' Court, *Philadelphia*, making distribution of the proceeds of sale of a portion of the real estate of Benjamin Sharpnack, deceased.

Benjamin Sharpnack having made a will, dated March 10, 1832, died about the 10th November, 1834. He had never been married, and at the time of his death left, as his next of kin, the appellant, Ann C. Stook, a daughter of a deceased brother, and three sisters, Mary and Sarah Sharpnack, and Elizabeth Hergesheimer, wife of George Hergesheimer, formerly Elizabeth Sharpnack.

The clause of the will under which the contest arose, is in these words:

"And I also give and bequeath to my aforesaid sisters, *Mary and Sarah*, or to the survivor of them, the life estate of the property on which I now reside (late the homestead of my father), and whereas, my said two sisters hold a mortgage against me on said property, it is desired by me, that *after the decease of both my said sisters the remainder of said property, after deducting and paying the amount of said mortgage to those entitled thereto, be divided among my* THEN *heirs at law, or their legal representatives, to them, their heirs and assigns for ever.*"

The life estates created, were terminated sometime about the beginning of the year 1849, by the decease of the survivor of the said two sisters, prior to which, the *third* sister, the said Elizabeth Hergesheimer, *and all her children*, had died. The surviving relatives of the testator, were,

1. His niece, Ann C. Stook, the appellant, only daughter of John Sharpnack, a deceased brother of testator, and

2. The *grandchildren* of his sister Elizabeth Hergesheimer, deceased, the appellees.

An auditor was appointed, whose report the Court confirmed, decreeing one-half of the proceeds of the subject of the provision

2 G

of the will to Ann C. Stook, and the other half to the eight grand-children of Elizabeth Hergesheimer.

An appeal was entered by Ann C. Stook.

Exceptions were filed to the decree, viz., 1. That the Court erred in confirming the report of the auditor.

2: In not decreeing *the whole fund* to Ann C. Stook.

In the Intestate Act of 8th April, 1833, which Act took effect on the 1st October, 1833, it is provided as follows:

Sect. VII. In default of all persons hereinbefore described, the real and personal estates of the intestate shall descend to, and be distributed among the next of kin to such intestate.

Sect. VIII. Provided, That there shall be no representation admitted amongst collaterals, after brothers' and sisters' children.

*Otterson*, for appellant.—1. At the time of the testator's death the Act of 8th April, 1833, was in force. The 8th section of that Act provides that "there shall be *no representation* admitted among collaterals *after brothers' and sisters' children.*" This provision, and in these words, is found in the Justinian Code, the English Statute of distributions (22 and 23 Charles 2, ch. 10), and in an Act of Assembly of 1705. It is supposed to have been omitted accidentally in the engrossment of the Act of 1794. The Act of 1833 has restored it. The words used have long since received judicial interpretation. Beeton *v.* Darkin, 2 *Vernon*, 170, (n. 1,) Trin. Term, 1690; Maw *v.* Harding, *Pr. in Ch.* 28, 2 *Vernon*, 33, Trin. T. 1691; and in Pett's case, 1 *Peere Williams*, 25, intestate died leaving a deceased brother's *child*, and a deceased brother's *grandchild*, and the *grandchild was not admitted to any distributive share.* The clause in the statute which says that there shall be no representation amongst collaterals after brothers' and sisters' children, being to be intended that none shall take by representation but the *children of brothers and sisters to the intestate*, HOLT, C. J., Trin. T. 1700—and this decision was adverted to and reaffirmed in the case of Bowers *v.* Littlewood, 1 *Peere Williams*, 593, by PARKER, Ld. Ch. Mich. T. 1719—and the same was held in Widmore *v.* Woodruff, *Ambler*, 636, 595. See 7 *W. & Ser.* 253.

2. Had this Act not been in force at the decease of the testator, it still would have governed the case, because he postpones the operation of this clause of the will to a period subsequent to his death by the use of the word "*then.*" He says "*after* the decease of both my said sisters, I give and bequeath the remainder of said property to my *then* heirs at law, or their legal representatives, to them, their heirs and assigns for ever."

There was no bequest to a person to be ascertained at all until *after* the death of the sisters. Nothing vested until the termina-

tion of the life estates: Archer *v.* Jegon, 8 *Simon,* 448; Smith *v.* Smith, *Id.* 353; Hetherington *v.* Oakford, 7 *Jurist,* 571.

The latter part of the clause, to wit: "or their legal representatives, to them, their heirs and assigns for ever," contains no qualification of the former, for the sense is the same without as with it, and the whole clause conveys the same idea as if he had said that those persons were to take under the will at the time appointed, who would have taken had he lived until that time and then died intestate.

*H. M. Phillips,* with whom was *Page,* for appellees.—The testator's *intention* must govern: *Swinburne on Wills,* part 1, 29; 10 *Barr* 498, Johnson *v.* Currin; *V. & B.* 272; 1 *Burr.* 38; 4 *Id.* 2581.

Applying the rule of intention, it was contended that the testator intended to divide his property so as to make distribution according to the decree of the Orphans' Court in this case; that the will was to this effect, " I give all my property (my homestead excepted) to my two unmarried sisters, Mary and Sarah, to my other sister, Mrs. Hergesheimer, and to my niece, Ann Stook (my brother's daughter), they being my heirs at law; and the homestead I give to my unmarried sisters during their lives, and the life of the survivors, and *then* it shall be sold, and the proceeds be divided among my *remaining* heirs;" the word "*then*" signifying "*remaining*" after the death of two of those whom he recognised as his heirs at law. The words " heirs at law" are but words of description; but if intended to cast the estate, as though in case of intestacy, it is obvious that, as the law stood (which the testator is presumed to have known), the property would have been divided as it has been. The then existing law of 1794 (the will being made in 1832) describes who shall be heir at law, and the testator uses the same words of description with the same meaning. This is known by his adding the words " *or their legal representatives;*" for if a contrary construction of his language be adopted, the death of Mrs. Stook, the present appellant, would have barred her representatives, if there had been any of a nearer generation.

It was submitted, that the testator used the words as words of participation, and not of exclusion, and that he had so declared his purpose in the entire will.

The Act of 8th April, 1833, was reported to the Legislature in 1832, by the Commissioners of the Civil Code, who, in their report (p. 483, *Report on Revised Code*), justify the introduction of the 8th section upon grounds of policy, and attribute its repeal in 1794 to accident. But it is a " Statute" relating to the descent and distribution of the estates of " *Intestates,*" and the clause relied upon is a proviso to the 7th section, admitting collateral

relatives, in default of certain others named in a preceding section. *This* is not a case of *intestacy*, nor does it relate to the distribution of the estate of *an intestate*, and therefore the 8th section does not apply; for the only intestacy would be that of Mrs. Hergesheimer, whose lineal descendants are the appellees.

*Cadwalader*, in reply.

The opinion of the Court was delivered, March 21, by

Lowrie, J.—Many persons write their wills with such an undefined conception of what they wish, especially in their substitutionary provisions, and with such little carefulness that their intentions shall be understood by others, that judicial interpretation must very often be a mere systematic mode of guessing at what the intention would have been, or how it would have been expressed, had the testator taken the trouble to think more accurately about the subject.    The present will is of this kind.

The testator gives to his two maiden sisters a life estate in land, and then provides that, after their death, it shall go to his "then heirs at law or their legal representatives, to them, their heirs and assigns for ever."    At the death of his sisters, the next of kin of the testator were Ann C. Stook, a brother's daughter, and several grandnephews and grandnieces, the grandchildren of a sister, who was living at his death, but died afterwards.    The question is, does Ann C. Stook take the whole as his "then heir;" or does she take only the one-half, and the grandnephews and grandnieces the other half?

Our law does not look for collateral heirs beyond brothers' and sisters' children (see Act relating to descents, 1833, s. 8); and, therefore, the grandnephews and grandnieces cannot take strictly as heirs.    But, if their grandmother took a vested estate under this will, they can take as her heirs; or they can take as devisees, if they are described as such.

Their grandmother did not take a vested estate, if the testator meant to give it to those only of his heirs who should be living at the expiration of the life estate.    Is this his meaning?    He gives it to his "then heirs at law or their legal representatives."    Why shall we reject this last part of the expression?    It may indeed be redundant, if the former part be taken strictly; but, if it be itself taken strictly, it throws back the redundancy upon the word "then."    We therefore gain nothing by this suggestion; for we know not which to reject or modify.    But is the expression not rather elliptical than redundant?    Is it not equivalent to saying —I give it to my heirs, or to the legal representatives of such as would have been heirs if then living?    A man is quite as apt to be elliptical as redundant, in writing his will, if not much more so.    If the reading just suggested is the true one, then the grandmother

[Stook's Appeal.]

of the Hergesheimers took a vested estate, and they take as her heirs. And the law leans in favor of this construction, by favoring, in doubtful cases, the claim of the heir who was such at the death, and by preferring a vested to a contingent estate, where the intention is uncertain.

The circumstances show that the use of the word "then" can be very easily accounted for, and that it is possibly misplaced. He provides that the old homestead of the family, which he had obtained from his father, shall remain during life with his two old maiden sisters, and it was perfectly natural that he should next provide that it should then go (as we read it) to his other heirs or their legal representatives; in other words, to the remaining descendants of his father. Following this construction, we retain the words "or their legal representatives;" and it is certainly much more probable that the word "then" should have been misplaced than that these other words should have been used without any corresponding idea in the mind of the testator.

Let it be granted that the foregoing exposition is not entirely satisfactory; it becomes so when we view this clause in another aspect. Who are described as devisees? His "then heirs at law or their legal representatives." This description is peculiar, and it is very hard to believe that it was used except to convey the idea that, if any of his heirs should die before the estate should vest in possession, then the heirs or devisees of such heirs should take. He could not have meant to provide for their assigns, for, in another clause, he attempts to exclude the power of assignment as to one of them, even after the vesting in possession. Then he intended, as we have supposed; or he intended nothing by the words "legal representatives," which we cannot suppose. These words are truly descriptive of the devisees, and not words of limitation; otherwise we fall into another difficulty; for he uses words of limitation immediately afterwards, "to them, their heirs and assigns for ever." It follows, therefore, that the Court below was right in decreeing one-half to Mrs. Stook and the other half to the Hergesheimers.

Judgment affirmed.